UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| FRED H. WRIGHT, | ) | |
| | ) | |
|    *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-cv-200 |
| | ) | |
| MAGELLAN BEHAVIORAL HEALTH, INC., | ) | Judge Mattice |
| | ) | |
|    *Defendant.* | ) | |

## MEMORANDUM AND ORDER

Before the Court are the parties' cross motions for summary judgment. Each seeks a determination as to whether Defendant breached a contract between Plaintiff and Defendant. As the parties' motions present opposing sides of the same issue, the Court will address both simultaneously. For the reasons set forth below, the Court will **GRANT** Defendant's Motion for Summary Judgment (Court Doc. No. 27) and **DENY** Plaintiff's Motion for Summary Judgment (Court Doc. No. 24).

**I.  SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot

weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may bear this burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply " 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. FACTS

Plaintiff is a psychologist licensed to practice in the State of Tennessee (Court Doc. No. 28, Def.'s Statement of Undisputed Material Facts ¶ 1) and is a resident of Tennessee (Court Doc. No. 1-2, Compl. ¶ 1). Defendant is a managed behavioral health organization incorporated under the laws of Delaware. (Def.'s Statement of Undisputed Material Facts ¶ 3.) Plaintiff and Defendant entered into a Provider Participation Agreement ("Agreement") whereby Plaintiff would provide treatment to patients insured by one or more companies with which Defendant had contracted to provide treatment. (*See* Court Doc. No. 1-2, Provider Participation Agreement 1.) The Agreement provides, in relevant part:

> Termination with cause by Magellan. [Defendant] shall have the right to terminate this Agreement immediately by giving written notice to [Plaintiff] upon the occurrence of any of the following events:
> . . .
> (b) Restriction, suspension or revocation of [Plaintiff's] license, certification, and/or membership on the active medical staff of a hospital. . . .

(*Id* §11.)

On August 7, 2002, the Tennessee Board of Examiners in Psychology (the "Board") conducted a hearing in regard to a complaint filed against Plaintiff. *Wright v. Tenn. Bd. of Exam'rs in Psychology*, No. M2003-01654-COA-R3-CV2004, 2004 WL 3008881, at *2 (Tenn. Ct. App. Dec. 8, 2004). At the conclusion of this hearing, the Board ordered the following:

> 1. Respondent's license to practice as a psychologist in the State of Tennessee is hereby placed on PROBATION for a period of two (2) years, subject to the following terms and conditions:
>
> (a) *Supervision.* Within thirty (30) days from the date of the entry of this Order, Respondent must provide to a representative of the Board the

> name and *curriculum vitae* of a supervising psychologist ("Supervisor") . . . .
>
> The Supervisor shall monitor Respondent's practice with respect to documentation practices and ethical decision making. Any and all costs relating to this supervision shall be the sole responsibility of the Respondent.
>
> Respondent shall submit or cause to be submitted reports from the Supervisor regarding Respondent's performance by June 30th and December 31st of each year. Failure to submit or have such reports submitted in a timely manner shall be considered a violation of this Order.
> . . . .

*Id.* at *2-3. The Board's order was later affirmed by the Court of Appeals of Tennessee. *Id.* at *11.

After waiting for Plaintiff to exhaust his appeal of the Board's decision (Def.'s Statement of Undisputed Material Facts ¶ 27) Defendant notified Plaintiff by letter on August 15, 2005, that it was terminating the Agreement because of the Board's decision. (Court Doc. No. 28-10, Letter from Howard Burtley, Chair, Professional Provider Review Committee to Plaintiff (Aug. 15, 2005)).

### III. ANALYSIS

#### A. Breach of Contract

The parties argue, *inter alia*, regarding whether Defendant had the right to terminate the Agreement for cause in response to the Board's placement of Plaintiff's professional license on probationary status. Central to this argument is whether the Board's requirement of supervision constitutes a "restriction" of Plaintiff's license as this term is used in the Agreement.

In cases arising under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, the Court must apply the choice of law rules of the state in which the Court sits.

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir. 2003). The Agreement contemplates performance in Tennessee, and contains a Tennessee choice of law clause (*see* Agreement § 12.6.) Tennessee courts regularly uphold choice of law clauses in these circumstances. *See Wright v. Rains*, 106 S.W.3d 678, 681 (Tenn. Ct. App. 2003). Accordingly, the Court will apply the substantive law of Tennessee to its construction of the Agreement.

In Tennessee, the terms of a written contract must be construed according to their plain meaning. *94th Aero Squadron of Memphis, Inc. v. Memphis-Shelby County Airport Auth.*, 169 S.W.3d 627, 634 (Tenn. Ct. App. 2004). "[I]n the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may be thought harsh or unjust." *Heyer-Jordan & Assoc., Inc. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990) (citing *Ballard v. North Am. Life & Cas. Co.*, 667 S.W.2d 79 (Tenn. Ct. App. 1983)). The rights and obligations of parties to a contract are determined by the terms written in the agreement. *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys.*, 884 S.W.2d 458, 461-62 (Tenn. Ct. App. 1994).

In the instant case, the Court is required to interpret the word "restriction" as used by the parties in the Agreement. The parties apparently agree that the legal definition of restriction—"a limitation or qualification," *Black's Law Dictionary* 1341 (8th ed. 1999)—is a good place to start. Thus, the Court must determine whether the board's supervision requirement falls within this definition.

In a similar context, the Tennessee General Assembly has recognized that a requirement of supervision does serve to restrict a professional license. It defines the term " 'Restricted physical therapy license' [as] a license on which the committee places *restrictions* or conditions, or both, as to scope of practice, place of practice, *supervision of practice*, duration of licensed status, or type of condition of patient to whom the licensee may provide services . . . ." Tenn. Code Ann. § 63-13-103(17) (emphasis added).

The Court finds this statute instructive. Before Plaintiff's license was placed on probation, he enjoyed the privilege of practicing his profession unencumbered by direct supervision. Now, according to the Board's order, Plaintiff may only practice "subject to [certain] terms and conditions" including supervision by another psychologist. *Wright*, 2004 WL 3008881, at *2. If this supervision is to be anything more than mere verbiage, the supervising psychologist must have some means to curtail Plaintiff's ability to practice as he alone sees fit. While the supervising psychologist's ability to influence and control Plaintiff's practice may well be indirect—via his biannual reports to the Board—it is no less real. Simply stated, Plaintiff's practice is now limited by the Board's requirement of supervision. Therefore, the Court holds that the probation imposed on Plaintiff's license is a "restriction" as that term is used in Section 11.3(b) of the Agreement.

Further, Defendant gave written notice to Plaintiff that it was exercising its right under Section 11.3(b) to terminate the Agreement. Accordingly, the Court holds that Defendant properly terminated the Agreement, and is not in breach of the same.

### B. Breach of Implied Duty of Good Faith and Fair Dealing

In Tennessee, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Austa La Vista, LLC v. Mariner's Pointe Interval Owners Ass'n, Inc.*, 173 S.W.3d 786, 792 (Tenn. Ct. App. 2005). "The extent of the duty to perform a contract in good faith depends upon the individual contract in each case." *Barnes & Robinson Co., Inc. v. OneSource Facility Services, Inc.*, 195 S.W.3d 637, 643 (Tenn. Ct. App. 2006) "The implied obligation of good faith and fair dealing does not, however, create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement." *Id.*

In the instant case, Defendant merely exercised its right to terminate the Agreement. Plaintiff cannot circumscribe this right by invoking Defendant's implied duty of good faith. *See id.* Moreover, Defendant allowed Plaintiff to exhaust his appeal of the Board's decision, even though it was not contractually obliged to do so. If anything, Defendant's conduct leading up to its decision to terminate the Agreement may be seen as forbearing. Nothing in the record suggests that Defendant acted act unfairly or in bad faith in terminating the Agreement. Accordingly, Plaintiff's argument to the contrary is rejected.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment [Court Doc. No. 27] and **DENIES** Plaintiff's Motion for Summary Judgment [Court Doc. No. 24].

SO ORDERED this 3rd day of July, 2007.

                                         */s/ Harry S. Mattice, Jr.*
                                         HARRY S. MATTICE, JR.
                                       UNITED STATES DISTRICT JUDGE